Nichols, C. J.
The general assembly of Ohio, on March 21, 1917 (107 O. L., 695), amended Section 5372, General Code, by providing, in effect, that mortgages thereafter executed on real estate located and taxed within the state should not be required to be listed for taxation. In lieu of any *546 form of taxation the mortgagee is .required to pay to the recorder at time of filing instrument a special registration fee of one-half of one per centum on the amount secured by such mortgage, to be placed to the credit of the undivided tax fund.
The constitutionality of this new law, as soon as the statute became effective, was challenged by action filed in this court against the recorder of Franklin county, it being therein asserted that the newly amended statute is in conflict with -Section 2, Article XII of the Constitution of Ohio, providing that “Laws shall be passed, taxing by a uniform rule, all moneys, credits, * * * and also all real and personal property according to its true value in money * *
The specific attack on the law is based on the admitted fact that by its provisions mortgages and the debt secured thereby are placed in a peculiar class differing from all -other property and are' substantially exempted from taxation, the only requirement being the payment of one-half of one per centum of the face of the debt, and this payment to be made but once, no matter if the mortgage should -continue as a live asset in the hands of the owner for any number of years. The privilege thus created does not operate in favor of holders of chattel mortgages, nor holders of bills and notes unsecured by any kind of mortgage, but is entirely limited to mortgages on Ohio real estate, the holder of the real estate mortgage escaping taxation by the payment of the arbitrary registration fee; while all other instruments calling for the unconditional *547 payment of money must continue to be taxed annually at their true value in money.
There is no difficulty of construction to be encountered in the consideration of this statute, as it specifically exempts in effect all credits in form of real estate mortgage-notes.
The conceded effect of the law is to at once and forever withdraw from the field of taxable property all mortgages hereafter executed covering Ohio real estate.
It is admitted, necessarily, that, sometime prior to the passage of this law, it was the universal opinion that such a vital change in our tax laws could not be worked out without resort to the still cumbersome method of amending our constitution.
If it now develops that this change can be wrought by mere legislative action, then a tremendous amount of wasted effort has been expended in Ohio during the past few years by a large and sincere body of thinkers who are proponents of the classification theory in taxation. This theory has been repeatedly advanced; was considered and rejected by the recent constitutional convention; and has been submitted to the voters of Ohio in form of an amendment to the constitution, only to be decisively rejected.
Undaunted by defeat, indeed only spurred there- ' by to stronger agitation and action, it was discpvered over night that after all an amendment to the constitution was wholly unnecessary and that the general assembly always possessed the power to put in full operation in Ohio the system of *548 classification of property for taxation purposes already in vogue in many of the states of the Union.
Thereafter the general assembly, by a nearly unanimous vote, availed itself of this newly-found power and enacted the law now assailed by the plaintiff in the instant case.
The position of those who challenge the law' is that a mortgage, or the debt secured thereby, is a credit, and that this law exempts it from taxation.
Those defending the law, while conceding that the mortgage, or the debt, as the case may be, is a credit, and that it is to be withdrawn from taxation, yet answer it is not property and the act does not exempt property from taxation.
This latter position is sought to be maintained on the theory that no new property is created by the transaction by which a mortgagor borrows money and transfers to the mortgagee, through the instrumentality of a mortgage, an interest in his real estate, to secure its payment.
It is suggested that, before the consummation of the transaction, the borrower owns the land, the lender the money; when consummated, the borrower owns the money and the lender becomes the owner of an estate in the land, for his protection, and in addition receives the personal obligation of the borrower to repay.
It is further suggested that this transaction is a mere exchange of property without the creation of any new property.
Upon this foundation, then, is sought to be built the structure not of exemption but of destruction *549 of property; for, although before the consummation of the transaction the money in hands of the lender is taxable, as is the realty in the hands of the borrower, yet, once consummated, the money ceases to have being.
Should we adopt the reasoning of the defenders of the new law it would be a gross misnomer to characterize this change of the property as the creation of an intangible asset. It is a destruction of the very existence of the money. It vanishes into something less than intangibility. It becomes so interminably associated with the real estate in question that the state cannot impute value to the one class of property, that is, the mortgage note, since it already has seized for taxation the real estate so mortgaged. The money from a taxation standpoint has been absorbed and its identity completely lost.
The defendant seeks further to justify the new law by returning to the old-time charge against the state, that, in continuing to collect taxes from the mortgagor on the full value of the mortgaged real estate, and also from the mortgagee on the full amount of the credit, it, the state, is guilty of practicing a system of double taxation.
For instance, the prospective purchaser of a ten thousand dollar farm lacks five thousand dollars of the amount necessary to complete the transaction. He consults the money lender, and borrows five thousand dollars by mortgage on the farm. The state, it is claimed, is taxing a man of straw when it exacts its rate both from the ten thousand dollar farm and the five thousand dollar mortgage.
*550 There would be much more virtue in the claim of double taxation if the court had under review a law, which, while requiring the mortgagee to submit his credit for taxation, at the same time provided that the mortgaged land was to go on the duplicate only to the extent of the difference between its true value in money and the amount of the mortgage.
Under the law as we find it, no relief is afforded to the real victim of double taxation, if any there be. He is left where the general assembly finds him. The real advantage, and the only apparent one, is gained by the lender of money in his entire relief from taxation.
We do not feel that it lies in the conscience of the mortgagee to avail himself of the charge of double taxation in order to defend the law.
One thing is quite certain, he is not being doubly taxed when he transfers his property from its money form to the mortgage form.
It cannot be said to have been the clear purpose of the amended law to avoid the so-called double taxation on Ohio real estate burdened by mortgage debt. If such was the purpose, it is most artfully concealed.
The contention is made that under the new law the relief will be indirectly afforded the mortgaged landowner by reason of an automatic reduction in interest rates on real estate loans. This is at best an uncertainty, and is a speculative phase of the new law with which the court cannot concern itself, and we therefore dismiss this feature *551 of the claim of the defendants with the brief comment made.
We are convinced, however, that the supporters of the statute in question base their argument of double taxation upon a wrong premise. They take it for granted that, in every case, loaned money, the repayment of which is secured by mortgage on land, enters into or is invested in some way in the land itself, either for its improvement or for the payment of its purchase money.
A slight consideration will show this assumption to be not well founded. Money loaned on a note, which is secured by mortgage on land, may be, and frequently is, borrowed for use in some business or enterprise wholly disconnected with the land itself. The note represents the credit, and under the present system of taxation is the thing taxed, whether it is secured or unsecured. In the eye of the law a credit is a thing, even though incorporeal. The security is a mere incident. The security for the payment of the debt, to-wit, the mortgage, is not the credit, and the credit is the thing taxed.
This is of course equally true even where the mortgage is given to secure the unpaid part of the' purchase money.
We are not in sympathy with the position of defendant to the effect that the mortgage is not property in a taxable sense, but a mere credit without taxable status. The distinction sought is entirely too fanciful and without real merit.
By some rare refinement of reason it may be possible to subtly demonstrate that since the land mortgaged is already taxed in its entirety the money *552 loaned thereon has no status as a taxable entity, but is a mere phantom without form or substance either corporeal or incorporeal.
We are not content to follow this line of logic, but do hold that the mortgage debt is included within the proper definition of the term “property” as employed in the constitution.
Certainly in practical operation both the mortgage and the note which it secures are in all respects and in the fullest sense property. They constitute a taxable credit.
If this law were upheld, there would be inevitably lodged in the general assembly the power of arbitrarily designating what property should, and what should not, bear the burden of paying the expense of government.
It is unmistakably clear that those who framed our constitution sought to prevent at all hazards the conferring of any such dangerous power on the lawmaking body.
Reliance is placed in a large measure by defendant on the principles laid down in the case of Savings & Loan Society v. Multnomah County, 169 U. S., 421. Justice Gray, speaking for the supreme court of the United States, says at page 427: “The State may tax real estate mortgaged, as it may all other property within its jurisdiction, at its full value. It may do this, either by taxing the whole to the mortgagor, or by taxing to the mortgagee the interest therein represented by the mortgage, and to the mortgagor the remaining interest in the land. And it may, for the purposes of taxation, either treat the mortgage debt as personal property, to be *553 taxed, like other choses in action, to the creditor at his domicile; or treat the mortgagee’s interest in the land as real estate, to be taxed to him, like other real property, at its situs.”
Giving full recognition to the doctrine' thus maintained, it signally fails to give any aid and comfort to the defendant.
The old-time method of taxation of mortgages in Ohio is fully justified by Justice Gray, and the only avenue of escape he allows to the mortgagee is that he pay the taxes, to the extent of his mortgage, on the land his mortgage covers. The learned justice does not hint in the slightest degree that an act would be sustained as constitutional which exempted flatly the mortgage from taxation in hands of the mortgagee, without requiring the equivalent in the form of payment of taxes on the mortgagee’s interest in the land as real estate.
The act under consideration does not provide that after the mortgagee has escaped the payment of taxes on his credit he shall pay it in the other form.
Had it so provided, as heretofore suggested, quite another question would have been before the court.
In its present form, the court is convinced that the constitutional requirement as to uniformity of taxation of all property has been violated by the general assembly, and the law so enacted is in clear and direct conflict with Section 2, Article XII of the Constitution.
The law clearly classifies Ohio real estate mortgage indebtedness by the proposed exemption, and *554 the demurrer to the petition must therefore be overruled.

Demurrer overruled. Writ to issue.

Wanamaker, Newman, Jones, Matthias, Johnson and Donahue, JJ., concur.